Mónica Balderrama (SBN 196424)
MBalderrama@InitiativeLegal.com
Gene Williams (SBN 211390)
GWilliams@InitiativeLegal.com
Initiative Legal Group APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone:    (310) 556-5637
Facsimile:    (310) 861-9051

Former Attorneys for Plaintiff Eric Clarke[1]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| ERIC CLARKE, individually, and on behalf of other members of the general public similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>FIRST TRANSIT, INC., a Delaware corporation; FIRST TRANSIT TRANSPORTATION, LLC, a Delaware limited liability company; FIRSTGROUP AMERICA, INC., a Florida corporation; FIRST TRANSIT, a business entity form unknown, FIRST TRANSIT TRANSPORTATION, a business entity form unknown; FIRST GROUP AMERICA COMPANY, a business entity form unknown; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No.:  CV 07-06476 GAF (JCGx)<br><br>Assigned to Hon. Gary A. Feess<br><br>CLASS ACTION<br><br>**OPPOSITION TO DEFENDANTS' MOTION FOR AN ORDER IMPOSING SANCTIONS FOR INITIATIVE LEGAL GROUP'S VIOLATIONS OF THE COURT'S MAY 6, 2011 PROTECTIVE ORDER AND BREACHES OF ETHICAL OBLIGATIONS**<br><br>Date:    August 13, 2012<br>Time:    9:30 a.m.<br>Place:   Courtroom 740—Roybal Federal Bldg. |

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

---

[1] Initiative Legal Group APC is no longer counsel of record for Eric Clarke, as they substituted out of the action on April 16, 2012 (order entered on April 17, 2012). ILG was replaced as counsel by the Law Offices of Mark Yablonovich.  (Docket No. 103.)

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   FACTS AND PROCEDURE ...............................................................................2

    A.   The *Clarke* Action Is Filed ......................................................................2

    B.   The Overlapping *Paprock* Action Is Filed 33 Months Later ...............4

    C.   The Parties in the Related Actions Attend Mediation ........................4

    D.   ILG Sends a Letter to *Clarke* Putative Class Members.....................5

    E.   *Paprock*'s Paratransit Claims Are Certified .......................................5

    F.   ILG Files *Flores* Action.............................................................................6

    G.   Defendants Seek To Disqualify ILG and Demand That ILG Abandon
         Its Clients ......................................................................................................7

    H.   Defendants Fail To Meet and Confer Resulting In a Violation of Local
         Rule 7-3 .........................................................................................................8

III.  ARGUMENT..........................................................................................................9

    A.   ILG Did Not Violate The Protective Order ...........................................9

        1.   Defendants Must Establish Civil Contempt by Clear and
              Convincing Evidence .....................................................................9

        2.   The January 2012 Letter and Attorney-Client Agreement Do Not
              Violate the Protective Order ........................................................9

        3.   The Filing of *Flores* Does Not Violate The Protective Order.......10

        4.   *Flores* Was Not Filed for Improper Reasons and Does Not
              Interfere With *Paprock* ..................................................................11

    B.   Defendants' Motion Is Procedurally Defective and Otherwise Improper.......11

        1.   Defendants Themselves Violated the Protective Order and Local
              Rule 5.2-1 by Bringing Their Motion .........................................11

        2.   Defendants Are Knowingly Seeking a Remedy That Violates the
              Rules of Professional Conduct ....................................................12

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

3.  Defendants Improperly Seek To Use a Disfavored Disqualification Motion For Tactical Advantage ...................................................................14

4.  The Timing of Defendants' Motion Demonstrates Misuse of the Protective Order ...........................................................................................16

C.  ILG's Communications With Putative Class Members Were Accurate And Proper ...................................................................................................17

1.  The January 2012 Letter and Attorney-Client Agreements to Putative Class Members Were Accurate ...............................................17

2.  ILG Had No Duty to Disclose the Other Actions ...................................19

D.  Defendants Assert a Duty of Loyalty Where None Exists and a Violation That Did Not Occur .....................................................................19

1.  There Was Never an Attorney-Client Relationship Between ILG And The Putative Class Members In *Clarke* ...........................................19

2.  Even If There Was a Duty, ILG's Actions Have Been Consistent with Any Such Duty ...............................................................................21

(a)  The *Flores* Action Provides Employees With Additional Opportunities For Recovery ..............................................................21

(b)  ILG Did Not "Gut" *Clarke* ...........................................................21

(c)  No Conflict of Interest Exists ........................................................22

IV.  CONCLUSION ....................................................................................................24

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

OPPOSITION TO DEFS.' MOT. FOR SANCTIONS

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Beam System Inc. v. Checkpoint Systems, Inc.*, No. CV95-4068-RMT
(AJWx), 1997 U.S. Dist. LEXIS 8812 (C.D. Cal. Feb. 5, 1997) ...................................15

*Del Campo v. Am. Corrective Counseling Servs, Inc.*, 2007 U.S. Dist.
LEXIS 48363 (N.D. Cal. June 27, 2007) ........................................................10

*Henry Schein, Inc. v. Certified Business Supply, Inc.*, No. 2008 U.S. Dist.
LEXIS 81826 (C.D. Cal. Aug. 20, 2008) ........................................................17

*Her v. Regions Fin. Corp.*, 2007 U.S. Dist. LEXIS 71736 (W.D. Ark.
Sept. 24, 2007) ........................................................................................ 20, 21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d
Cir. 1995) .............................................................................................. 20, 21

*In re Marvel*, 251 B.R. 869 (Bankr. N.D. Cal. 2000)......................................14

*Moreno v. AutoZone Inc.*, 2007 U.S. Dist. LEXIS 98250 (N.D. Cal. Dec. 5,
2007)......................................................................................................23

*Peterson v. Highland Music Inc.*, 140 F.3d 1313 (9th Cir. 1998).................9, 10

*Rand ex. Rel. Dolch v. Amer. National Ins. Co.*, No. C 09-639 SI, 2010 WL
2758720 (N.D. Cal. July 13, 2010) ...............................................................19

*Stone v. Advance Amer. Cash Adv. Ctrs., Inc.*, 2009 U.S. Dist. LEXIS
112968 (S.D. Cal. Dec. 4, 2009) ............................................................... 20, 21

*TransPerfect Global, Inc. v. MotionPointCorp.*, 2012 U.S. Dist. Lexis
85649 (N.D. Cal. June 20, 2012)...................................................................17

*Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100 (N.D. Cal.
2003).......................................................................................................14

**STATE CASES**

*Atari, Inc. v. Superior Ct.*, 166 Cal. App. 3d 867, 212 Cal. Rptr. 773 (1985) .................20

*Flatt v. Sup. Ct.* (9 Cal. 4th 275), 884 P.2d 950 (1994).......................................................23

*Gregori v. Bank of America*, 207 Cal. App. 3d 291, 254 Cal. Rptr. 853
    (1989) ........................................................................................................................14

*Kullar v. Foot Locker Retail, Inc.*, 191 Cal. App. 4th 1201, 121 Cal. Rptr.
    3d 353 (2011) ............................................................................................................20

*Parris v. Super. Ct.*, 109 Cal. App. 4th 285, 135 Cal. Rptr. 2d 90 (2003) ......................19

*River West Inc. v. Nickel*, 188 Cal. App. 3d 1297, 234 Cal. Rpt. 33 (1987) ...................17


**FEDERAL STATUTES**

F. Civ. P. R. 30(b)(6) ............................................................................................................4


**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 *et seq.* (Unfair Comp. Law (UCL)) ................................3

Cal. Cen. Dist. L.R. 5-2.1 ......................................................................................... 1, 11, 12

Cal. Cen. Dist. L.R. 7-3 ...................................................................................................1, 7, 8

Cal. R. Prof. Cond. 1-500........................................................................................... 13, 14

Cal. R. Prof. Cond. 3-300......................................................................................................20

Cal. R. Prof. Cond. 3-310......................................................................................................20

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

OPPOSITION TO DEFS.' MOT. FOR SANCTIONS

## I.   INTRODUCTION

Defendants seek to disqualify Initiative Legal Group APC ("ILG") based on an alleged violation of the parties' Stipulated Protective Order ("SPO"). ILG, however, did not violate the SPO. Defendants have utterly failed to meet their substantial burden to establish contempt by clear and convincing evidence justifying disqualification, or any other sanction, for that matter. Indeed, this motion is a pretext to prevent ILG from prosecuting the very claims contemplated and permitted by the SPO. Defendants waited five months to bring this concocted violation to the Court's attention and seek relief that bears no connection to the alleged violation. This motion for sanctions must be denied.

Defendants' motion is premised on the allegation that ILG violated the SPO by sending out a January 2012 letter and Attorney-Client Agreement. The letter and the Attorney-Client Agreement, which were sent to all putative class members in *Clarke* while ILG was still counsel of record, were sent in furtherance of ILG's litigation of the *Clarke* class action, and were completely within the purview of the SPO. Defendants have failed to show a single misrepresentation in the January 2012 letter or Attorney-Client Agreement. Further, the filing of the *Flores* action did not violate the SPO. *Flores* alleges the same claims against the same defendants on behalf of the same First Transit employees as the *Clarke* action. *Flores* was not filed, as Defendants allege, to interfere with *Paprock*, but rather to employ a different procedural mechanism to advance the same claims being pursued in *Clarke*. Under no circumstances do ILG's actions merit disqualification.

Defendants' motion is procedurally defective and filed for improper purposes. After failing to comply with Local Rule 7-3 with respect to Defendants' requested relief of disqualification, Defendants disclosed confidential information – the same information Defendants purportedly seek to protect – in violation of both the SPO and Central District Local Rules. Defendants disclosed the name and home address of a putative class member in the *Clarke* matter, without following the SPO procedures for filing under seal or Local Rule 5.2-1's requirement for redacting personal information.

Defendants are not genuinely seeking to protect confidential class member contact information, but instead are seeking to disqualify and sanction ILG for pursuing wage and hour claims.

ILG's communications with the putative class members in *Clarke* were entirely proper. Defendants fail to point to a single misrepresentation in either the January 2012 letter or the Attorney-Client Agreement, as every statement therein is true and accurate. At the time the letter and agreement were sent, ILG was prosecuting the class claims in *Clarke* and intended to pursue those claims, rather than any individual class members' claims. Only later was the decision made to file an action on behalf of the plaintiffs in *Flores*. Defendants go so far as to allege that ILG has an obligation to inform putative class members in *Clarke* of the existence of other later-filed, related actions. No such obligation exists.

Finally, Defendants seek disqualification on the grounds that ILG breached its duty of loyalty to the *Clarke* putative class. Yet the law does not recognize an Attorney-Client relationship between Class Counsel and putative class members prior to certification. Even if some duty did exist, ILG fulfilled all obligations owed to the *Clarke* putative class. Defendants cannot point to any action taken by ILG that is contrary to its efforts to obtain relief for the *Clarke* putative class members; nor can Defendants identify any actual conflict of interest arising from ILG's substitution out of *Clarke* and the filing of *Flores*.

ILG respectfully requests that the Court deny Defendants' motion.

## II.   FACTS AND PROCEDURE

### A.   The *Clarke* Action Is Filed

Plaintiff Eric Clarke ("Plaintiff" or "Clarke") filed a putative class action lawsuit in Los Angeles Superior Court against Defendants First Transit, Inc., First Transit Transportation, LLC, and First Group America, Inc. (collectively "First Transit" or "Defendants") on August 13, 2007. The complaint alleged Labor Code violations for unpaid overtime, failure to pay wages during employment and at termination, failure to

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    provide compliant meal and rest breaks, non-compliant wage statements, and

2    conversion, as well as violations of California Business & Professions Code

3    section 17200, *et seq.* The claims were brought on behalf of "all non-exempt hourly

4    paid employees who have been employed by Defendants within four years prior to the

5    filing of this complaint until resolution of this lawsuit." The putative class included *all*

6    *fixed route drivers* and *all paratransit drivers* who were employed by Defendants during

7    the relevant period. (Declaration of Gene Williams ["Williams Decl."] ¶ 3.)

8          On September 28, 2007, as counsel for *Clarke*, ILG served interrogatories asking

9    Defendants to produce putative class members' names and contact information. The

10   objective was to use the contact information to interview prospective class members

11   who, as percipient witnesses to the violations alleged in *Clarke*, could provide critical

12   evidence to support class certification and on the merits, post-certification. (Williams

13   Decl. ¶ 4.) These interrogatories were rendered moot, however, because Defendants

14   removed the action to this Court on October 4, 2007. (*Id.* ¶ 5.) (Docket No. 1.)

15   Thereafter, on January 18, 2008, plaintiffs' counsel in the related *Amalgamated* action

16   intervened and sought to stay the *Clarke* action. (Docket No. 20.) The Court granted the

17   motion to stay the *Clarke* action on February 7, 2008. (*Id.* ¶ 6.) (Docket No. 28.)

18         Once *Amalgamated* settled, Plaintiff and Defendants stipulated to lift the stay.

19   (Docket No. 75.) The order lifting the stay was entered by the Court on November 24,

20   2010 (Docket No. 76), and Plaintiff's counsel began actively litigating the matter.

21   (Williams Decl. ¶ 7.) On December 27, 2010, ILG again propounded interrogatories

22   seeking class member contact information. (*Id.* ¶ 8.) The parties entered into a

23   comprehensive discovery plan and on March 17, 2011 submitted to the Court the

24   Stipulated Protective Order (Docket No. 83), which was entered by the Court on May 6,

25   2011. (Williams Decl. ¶¶ 9-11.) The terms of the SPO are chiefly the basis for

26   Defendants' motion for sanctions.

27         The putative class members' complete contact information was ultimately

28   produced on or about August 12, 2011, at which point ILG commenced interviewing

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

putative class members to gather evidence in support of Plaintiff's anticipated motion for class certification. (Williams Decl. ¶ 12.)

### B. The Overlapping *Paprock* Action Is Filed 33 Months Later

While the *Clarke* action was stayed, and almost three years after it was filed, a related putative class action against First Transit was filed. *See Paprock v. First Transit, Inc.*, No. 37-2010-55583 (S.D. Super. Ct., filed May 26, 2010). *Paprock* alleged meal and rest break violations on behalf of all non-exempt hourly employees of First Transit from May 26, 2006 to the present,[2] therefore, involving the same employees that Clarke sought to represent, but for a class period 33 months shorter. (Williams Decl. ¶ 13.)

Based on the substantial overlap between the *Clarke* action and the much later-filed *Paprock* action, First Transit sought to stay the *Paprock* action, filing a motion to stay on September 29, 2010. (Williams Decl. ¶ 14, Ex. A.) Hon. Earl H. Maas III, San Diego Superior Court Judge, denied Defendants' motion on October 22, 2010, leaving the *Clarke* action and the *Paprock* action to proceed simultaneously despite their substantial overlap. (*Id.*, ¶15, Ex. B.)

As the two cases proceeded with simultaneous discovery, Plaintiff's counsel in *Clarke* sought to coordinate with Defendants and *Paprock*'s counsel the common corporate representative and Rule 30(b)(6) depositions of Defendants so that the witnesses would not have to be deposed twice. (Williams Decl. ¶ 16.) After *Paprock*'s counsel refused to permit *Clarke*'s counsel to even attend its PMQ depositions, Defendants obtained ex parte relief from the court instructing *Paprock*'s counsel that it could not preclude *Clarke*'s counsel from attending the PMQ depositions, and instructing the parties that the 30(b)(6) depositions taken by *Clarke*'s counsel would proceed immediately after the conclusion of *Paprock*'s PMQ depositions. (*Id.* ¶ 17.)

### C. The Parties in the Related Actions Attend Mediation

The parties, including counsel from the *Clarke* and *Paprock* actions, participated

---

[2] In light of the certification of the *Paprock* matter, the class period ended December 16, 2011.

1   in a mediation session on November 30, 2011, which was ultimately unsuccessful.  In

2   connection with the mediation, *Paprock*'s counsel advised *Clarke*'s counsel for the first

3   time that they did not believe that the claims of fixed route drivers could be certified, and

4   that those claims had little or no settlement value.  (Williams Decl. ¶ 18.)

5          **D.**     **ILG Sends a Letter to *Clarke* Putative Class Members**

6        As part of its ongoing efforts to interview putative class members, in preparation

7   for certification, ILG sent out letters to putative class members advising them of the

8   *Clarke* action and offering to represent the putative class members in connection with

9   the *Clarke* action.  (Williams Decl. ¶ 19, Ex. C.)  These letters, along with the

10   accompanying Attorney-Client Agreements, were sent out between January 4 and

11   January 11, 2012 to all putative class members, offering individual representation of

12   class members.  There were a number of litigation reasons for this, including: (1)

13   accepting service of deposition notices for class members if Defendants sought to depose

14   them; (2) defending individual class members at their depositions; (3) readily obtaining

15   evidence through the employees, including records requests made on their behalf to

16   defendants; (4) protecting communications between the putative class member and ILG;

17   and (5) substituting or adding class representatives if necessary to ensure the strongest

18   representative(s) for each theory of liability.

19          **E.**     ***Paprock*'s Paratransit Claims Are Certified**

20        *Paprock*'s class certification motion was heard on January 13, 2012.  While

21   *Paprock*'s original motion sought to certify claims on behalf of both fixed route and

22   paratransit drivers, by the time of the certification hearing, *Paprock*'s counsel had

23   abandoned the claims of fixed route drivers, as well as the claims of paratransit drivers

24   for missed first meal breaks (thus limiting their motion to paratransit drivers only for

25   missed rest breaks, missed second meal periods, and off-the-clock work).  Accordingly,

26   the court only granted certification of the subset of claims advanced *on behalf of the*

27

28

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  *paratransit drivers* on January 19, 2012.[3]  (Williams Decl. ¶ 20.) The parties were

2  ordered to prepare class notice to be disseminated to the members of the certified class

3  by February 17, 2012.  (*Id.* ¶ 21, Ex. D.)  As of the date of this opposition, however, no

4  notice has been agreed upon or sent to the certified class members in *Paprock*.

5         **F.**    **ILG Files *Flores* Action**

6         Based on putative class members' response to the January 2012 letter, and the

7  abandonment by *Paprock*'s counsel of all claims for fixed route drivers, as well as a

8  number of claims for paratransit drivers, and the potential impact of that abandonment

9  on the statutes of limitations for those drivers' claims, the *Flores* mass action, Case No.

10  12-CV-03309 GAF (JCGx), was filed on April 16, 2012, on behalf of a number of

11  current and former employees of Defendants who had retained ILG.  (Williams Decl. ¶

12  22.)  Simultaneous with filing the *Flores* action, ILG contacted Defendants and

13  identified all of its clients so that Defendants could in turn identify who among them was

14  a member of the certified *Paprock* action.  (*Id.* ¶ 23, Ex. E.)  Again on April 17, 2012,

15  ILG requested that Defendants identify who among ILG's clients were members of the

16  *Paprock* action.  (*Id.* ¶ 24, Ex. F.)  Defendants refused both requests, and to date, six

17  months post certification, neither *Paprock*'s counsel nor First Transit have identified

18  who is a member of the certified *Paprock* class.  (*Id.* ¶ 25.)

19         In April 2012, Mr. Clarke decided to seek other representation.  ILG ultimately

20  substituted out of the *Clarke* action and Mr. Clarke retained The Law Offices of Mark

21  Yablonovich, based in part on Mr. Yablonovich's personal familiarity with the case as

22  he was counsel of record when the case was originally filed.  (Williams Decl. ¶ 26.)

23  (Docket No. 103.)

24

25

26         [3] The court ultimately, at the request of *Paprock*'s counsel, entered an order that

27  "retroactively" certified the class as of December 16, 2011, the original date set for the
hearing on the class certification motion.  The impact of this is that the claims of putative

28  class members for the time period *after* December 16, 2011, are not covered by the
*Paprock* action, but are covered by the *Clarke* action.  (Williams Decl. ¶ 20.)

*(left margin)* INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

**G.     Defendants Seek To Disqualify ILG and Demand That ILG Abandon Its Clients**

When it became clear to Defendants that settlement on their terms was not likely, they for the first time raised the issue of the alleged violation of the SPO by ILG. (Williams Decl. ¶ 27.)  In a June 13, 2012 letter, Defendants identified the alleged violation of the SPO, and indicated that they intended to file a motion for civil contempt. Defendants offered to forego such a motion if ILG agreed to the following demands:

- Dismissal of the *Flores* action;
- A corrective letter to all *Clarke* class members who were sent the "solicitation" letter by ILG that would, among other things, inform those class members that ILG would not represent them in the *Clarke, Flores* or *Paprock* actions *or in any other action against First Transit*;
- Verification in writing that ILG will not "represent any clients in future legal actions relating in any way to their employment by First Transit, or termination of employment by First Transit;"
- Stipulation by ILG "to a waiver of the right to recover or receive any attorneys' fees or costs incurred in relation to any legal proceedings against First Transit;"
- Agreement by ILG to produce all documents and written discovery responses regarding its decision to file the *Flores* mass action and its communications with The Law Offices of Mark Yablonovich regarding his substitution as counsel of record in the *Clarke* action; and
- Return of all confidential documents.

(*Id.*, Ex. G.)

ILG responded on June 15, 2012, requesting a face-to-face conference of counsel pursuant to Local Rule 7-3, and offered to travel to San Diego to participate in the conference.  (Williams Decl. ¶ 28, Ex. H.)  On June 22, 2012, attorneys from ILG participated in an in-person meet and confer with Defendants' counsel in San Diego.

1  (*Id.* ¶ 29.)  At the meet and confer session, ILG alerted Defendants to the fact that at least

2  two of the six demands directly violated the California Rules of Professional Conduct,

3  which prohibit an attorney from offering to or making any agreement that would restrict

4  the ability of a member of the bar to practice law.  (*Id.*)

5  **H.      Defendants Fail To Meet and Confer Resulting In a Violation of Local**

6  **Rule 7-3**

7  Following the conference of counsel, Defendants' counsel sent a letter to ILG on

8  June 29, 2012.  (Williams Decl. ¶ 30, Ex. I.)  The June 29, 2012 letter eliminated

9  Defendants' original demands that ILG agree to limit its practice of law, instead

10  including only the demands for dismissal of the *Flores* action, a corrective letter,

11  Defendants' fees in connection with the motion, and for the first time raised the

12  suggestion of seeking disqualification of ILG from representing the *Clarke* class

13  members who received the January 2012 letter.  (*Id.*)

14  ILG responded by letter, pointing out that Defendants' June 29, 2012 letter had

15  raised issues that were not raised in the June 13, 2012 letter and not discussed during the

16  parties' in person meet and confer session.  (Williams Decl. ¶ 31, Ex. J.)  ILG requested

17  that the parties participate in the required conference of counsel regarding at least the

18  disqualification issue raised for the first time in the June 29, 2012 letter.  Defendants,

19  however, did not respond to the letter, but instead filed the instant motion without any

20  attempt to meet and confer about the disqualification issue.  (*Id.* ¶ 32.)

21  In addition, when Defendants filed the motion, they reversed course from their

22  June 29, 2012 letter by including one of the original demands that ILG be restricted from

23  the practice of law by seeking, among other remedies, an order preventing ILG from

24  representing anyone who was sent the January 2012 letter "in any action against First

25  Transit."  (Defs.' Memo. P & A at 24:17-18.)  Defendants made no effort to meet and

26  confer about their changed position with respect to this requested remedy.

27  ///

28  ///

OPPOSITION TO DEFS.' MOT. FOR SANCTIONS

III.    **ARGUMENT**

    A.    **ILG Did Not Violate The Protective Order**

        1.    **Defendants Must Establish Civil Contempt by Clear and Convincing Evidence**

Contempt motions require a showing of clear and convincing evidence that a party violated an order issued by the court. *Peterson v. Highland Music Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998). It is the burden of the party seeking sanctions to make this showing. Defendants have not met this burden.

        2.    **The January 2012 Letter and Attorney-Client Agreement Do Not Violate the Protective Order**

The January 2012 letter, sent to assist ILG in its prosecution of the *Clarke* action, is consistent with the terms of the SPO. As such, the January 2012 letter is consistent with the uses of names and contact information contemplated and expressly provided for by the SPO.

Multiple factors confirm the letter's compliance with the SPO. First, the letter's subject line references "the *Clarke* action," and the first sentence of the letter makes clear that ILG was representing Eric Clarke in a putative class action regarding Defendants' failure to pay overtime, failure to provide meal and rest breaks or premiums for non-compliant breaks, and for failure to issue compliant wage statements, and the third paragraph offers to advise and represent the individuals with respect to the same claims. In addition, the letter was sent to *all putative class members* in the *Clarke* action. (Williams Decl. ¶ 19.) As such, it is readily apparent that the letter is "for preparing for, defending and prosecuting this case, including any claims on behalf of the named plaintiff(s) and any putative class members . . ." (SPO, ¶ 7, Docket No. 83.)

Additionally, the Attorney-Client Agreement confirms that the letter was intended for the purpose of pursuing the claims of the putative class members alleged in the *Clarke* action. The agreement makes clear that "Attorneys *currently* represent Client and others similarly situated as a Class (and not in separate, individual cases)."

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   (Williams Decl. ¶ 19, Ex. C.) (Emphasis added.)

2         Defendants cannot point to any language in the letter or the agreement that

3   violates the SPO, nor can Defendants identify anything about the distribution of the letter

4   or the Attorney-Client Agreement that constitutes a violation.  Defendants' only

5   argument relates to the unsubstantiated claim that the alleged *purpose* of the letter and

6   Attorney-Client Agreement was to obtain clients for the filing of the *Flores* action.  This

7   claim is simply untrue.  As noted above, the letter and Attorney-Client Agreement were

8   sent specifically to assist ILG in its prosecution of the *Clarke* action, and Defendants

9   have submitted no evidence to support their contention to the contrary.[4]

10         **3.**      **The Filing of *Flores* Does Not Violate The Protective Order**

11         Neither the timing nor the subject matter of the *Flores* action support Defendants'

12   contention that ILG violated the SPO in connection with the letters and Attorney-Client

13   Agreements ILG sent to putative class members.  As an initial matter, the letters were

14   sent from January 4 to January 11, 2012.  Yet, the *Flores* action was not filed until over

15   three months later.  Defendants present no evidence connecting the two events or

16   suggesting that the letter was sent with an intention to later file the *Flores* action.  There

17   is no evidence to support Defendants' contention of the allegedly improper motive for

18   sending out the otherwise compliant letter and Attorney-Client Agreements, much less

19   the clear and convincing evidence necessary to establish contempt.  *See Peterson v.*

20   *Highland Music Inc.*, *supra*, at 1323.

21         Even assuming, *arguendo*, that ILG did send out the letters and Attorney-Client

22   Agreements with the express intention of filing the *Flores* action months later, this

23   would still not violate the SPO.  The SPO expressly permitted ILG to use the

24   information to prosecute the case, including "any claims on behalf of the named

25

26        [4] *Del Campo v. Am. Corrective Counseling Servs, Inc.*, 2007 U.S. Dist. LEXIS
48363 (N.D. Cal. June 27, 2007) is inapposite given that the violating party knowingly

27   and intentionally submitted confidential documents in another case.  Here, there is no
confidential "document" that has been disclosed.  In fact, the attorney-client relationship

28   that resulted between ILG and its clients was the basis for filing *Flores*, not confidential
information.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    plaintiff(s) and any putative class members." (SPO, ¶ 7, Docket No. 83.)  The *Flores*

2    action does precisely that – prosecutes the same claims alleged in *Clarke* on behalf of a

3    number of the putative class members.  This does not violate the terms of the SPO.

**4.    *Flores* Was Not Filed for Improper Reasons and Does Not Interfere With *Paprock***

6        Defendants' contention that the *Flores* action was improperly filed to "interfere"

7    with the *Paprock* action is also baseless.  Foremost, Defendants provide no evidence to

8    support this claim.  Defendants have altogether failed to articulate any improper

9    "interference" with the *Paprock* action.  To date, ILG's only involvement through the

10   *Flores* action in the *Paprock* action was ILG's ex parte application for the *Paprock* class

11   notice, which had been scheduled to be sent to some of ILG's clients, to be re-directed

12   instead to ILG.  Defendants do not attempt to explain how this request by ILG is

13   improper, much less an interference with the *Paprock* action.

**B.    Defendants' Motion Is Procedurally Defective and Otherwise Improper**

**1.    Defendants Themselves Violated the Protective Order and Local Rule 5.2-1 by Bringing Their Motion**

18       Defendants' disingenuous motion and feigned concern for maintaining the

19   confidentiality of class member contact information is revealed by Defendants' inclusion

20   in their motion of a document disclosing the very confidential information they

21   purportedly seek to protect.  Exhibit 8 to the Declaration of David Dow is a copy of one

22   of the letters sent by ILG in *Clarke*.  That exhibit includes the name and home address of

23   a class member, which Defendants themselves designated as confidential.  Defendants

24   failed to comply with paragraph 17 of the SPO, which details how confidential

25   information is to be treated in submissions to the Court.  Paragraph 17 provides:

26           For all pretrial discovery and non-discovery-related motions,
             memoranda of law, certification(s), declaration(s), and
27           exhibit(s) annexed thereto that contains Confidential
             Information shall be submitted for filing in accordance with
28           Local Rule 79 by placing the original and judge's copy of the

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

document in sealed, separate envelopes with a copy of the title page attached to the front of each envelope. Conformed copies need not be placed in sealed envelopes. Confidential material to be placed under seal, shall not be electronically filed but shall be filed manually in the manner prescribed by Local Rule 79-5. A Notice of Manual Filing shall also be electronically filed identifying materials being manually filed.

(SPO, ¶ 17, Docket No. 83.) Defendants took no effort to file any portion of their Motion or their Exhibit 8 under seal, as required by the SPO's clear, express terms.

In addition, Defendants' failure to redact the address of the putative class member violates Local Rule 5.2-1.1 which states in pertinent part:

It is the responsibility of the filer to ensure full compliance with the redaction requirements of Federal Rule of Civil Procedure 5.2. In addition, the filer shall ensure that any document that contains a home address shall include only the city and state. This restriction on including full home addresses shall not apply to a filing exempted by Federal Rule of Civil Procedure 5.2(b); to an under-seal filing as set forth in Federal Rule of Civil Procedure 5.2(d), (f), or (g); or where the redaction requirement with respect to that home address has been waived as provided in Federal Rule of Civil Procedure 5.2(h).

Central District of California Local Civil Rule 5.2-1.

## 2.    Defendants Are Knowingly Seeking a Remedy That Violates the Rules of Professional Conduct

Defendants' original demand to ILG, as articulated on June 13, 2012, was reiterated by Defendants' counsel during the parties' June 22, 2012 conference of counsel, included the following two demands:

- A letter to all individuals "solicited" by ILG using the contact information produced in the *Clarke* action "fully disclosing the misrepresentations made in ILG's solicitation letter and accompanying engagement letter," and "inform[ing] the individuals contacted that due to ILG's misrepresentations, ILG will not represent any of them . . . with respect to the *Clarke*, *Flores*, or *Paprock* actions **or any other action against First Transit.**" (Emphasis added.)

- Verification in writing that ILG will not "represent any clients in future legal actions relating in any way to their employment by First Transit, or termination of employment by First Transit."

(Williams Decl. ¶ 29, Ex. G.)

ILG advised Defendants' counsel at the parties' face-to-face conference of counsel that these two demands were in violation of California Rule of Professional Conduct 1-500 (Williams Decl. ¶ 29), which states that

> A member shall not be a party to or participate in offering or making an agreement, whether in connection with the settlement of a lawsuit or otherwise, if the agreement restricts the right of a member to practice law . . .

Cal. Rules Prof. Cond. 1-500.

Therefore, even the *demand* by Defendants' counsel that ILG agree to the two terms that restrict the right of ILG and its attorneys to practice law constitutes a violation of Rule 1-500, regardless of any later attempt by Defendants to subsequently withdraw part of the demand. Defendants' counsel "participat[ed] in offering" to make an agreement that would prevent ILG from representing any employee in any employment-related action against First Transit in perpetuity, or any of the *Clarke* putative class members in any future action against First Transit, whether employment-related or not.

Perhaps recognizing that their June 13, 2012 letter constituted a violation of the Rules of Professional Conduct, Defendants' subsequent letter on June 29, 2012 makes no such demands, and does not indicate that Defendants will seek such overbroad and improper relief. Yet, remarkably, when Defendants ultimately filed the present motion, they reversed course yet again, and while they eliminated one of the demands that violates Rule 1-500 (preventing ILG from representing any First Transit employees in any employment-related litigation against Defendants), they continue to actively seek an order from this Court "disqualifying ILG from representing any person who the solicitation letter was sent to **in any action against First Transit.**" (Defs.' Memo. P & A at 24:17-18.) This demand seeks to restrict ILG's ability to practice law, in violation

OPPOSITION TO DEFS.' MOT. FOR SANCTIONS

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    of Rule of Professional Conduct 1-500.

2            Equally important, this demand, as well as the demands originally proposed in

3    Defendants' June 13, 2012 letter, lay bare Defendants' true motivation for filing this

4    motion.  Defendants are not seeking a legitimate remedy for a perceived violation of the

5    SPO; rather, they are seeking to gain an advantage in hotly contested litigation by

6    preventing ILG from pursuing claims against the Defendants, regardless of the merits of

7    those claims.  The Court should not condone Defendants' tactics.

8                      **3.      Defendants Improperly Seek To Use a Disfavored**

9                            **Disqualification Motion For Tactical Advantage**

10           It is well established that motions to disqualify are "strongly disfavored."  *Visa*

11   *U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003).  That is

12   because such motions "often pose the very threat to the integrity of the judicial process

13   that they purport to prevent."  *Gregori v. Bank of America*, 207 Cal. App. 3d 291, 300-

14   301, 254 Cal. Rptr. 853, 858-859 (1989).  As a result, "[a] motion for disqualification of

15   counsel is a drastic measure that courts should hesitate to impose except when of

16   absolute necessity.  They are often tactically motivated; they tend to derail the efficient

17   progress of litigation."  *In re Marvel*, 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000).

18           Such is the case here.  Defendants have attempted to use the contrived violation of

19   the SPO to seek ILG's disqualification and, thereby, to gain a tactical advantage in the

20   *Clarke* and *Flores* actions.  The primary purpose of a protective order is to protect

21   confidential information from disclosure to a competitor, thereby putting the producing

22   party at a competitive disadvantage, not to allow a party to avoid liability in current or

23   future litigation or gain strategic advantage.  Most cases involving violations of

24   protective orders relate to the publication or misuse of sensitive intellectual property or

25   other trade secret information.  The primary case relied upon by Defendants to support

26   their contention that severe sanctions are warranted, *Beam System Inc. v. Checkpoint*

27   *Systems, Inc.*, No. CV95-4068-RMT (AJWx), 1997 U.S. Dist. LEXIS 8812 (C.D. Cal.

28   Feb. 5, 1997), involved just such issues.  While Defendants accurately excerpt the

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

court's language regarding the importance of respecting protective orders, they fail to point out that the court's analysis is based on issues completely unrelated to the facts in this case.  In *Beam*, the court's entire basis for its finding regarding enforcement of protective orders relates to the value and importance of protecting *intellectual property from disclosure to competitors*.  The court emphasized that "the policies supporting the protection of trade secrets are important.  Invention and technological advancement are encouraged by protecting trade secrets." *Beam*, 1997 U.S. Dist. Lexis 8812, 4 (C.D. Cal. Feb. 5, 1997).  The court went on to observe that

> The use of protective orders is vital to the efficient litigation of every stage of many intellectual property disputes.  If protective orders were not issued to safeguard the confidentiality of trade secrets and other confidential commercial information when warranted by the circumstances, litigants would be forced to choose between fully presenting their claims or defenses (and thereby destroying their trade secrets through disclosure to competitors or the public), or foregoing their claims or defenses in order to keep their trade secrets and other sensitive information confidential.

*Id.*

It is against the backdrop of protecting intellectual property rights or other proprietary information that the court held that violations of a protective order could not be tolerated.  There are no such circumstances at issue here.  There is no concern that disclosure of the class member contact information will somehow put Defendants at a competitive disadvantage.  Indeed, there has been no disclosure of confidential information by ILG.  As such, the rationale behind the *Beam* holding is simply inapplicable in the present case.

Defendants cannot make the argument that the alleged violation of the SPO by ILG resulted in some competitive disadvantage, or that ILG's use of the contact information will injure Defendants in the marketplace.  Instead, Defendants' purported prejudice is limited to (1) "interference" with the *Paprock* action and (2) having to litigate the *Flores* action.  Neither of these are valid forms of prejudice to justify *any* sanctions against ILG, much less the severe sanctions sought by Defendants.  First, ILG

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

OPPOSITION TO DEFS.' MOT. FOR SANCTIONS

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   would have taken the same position on class notice in the *Paprock* action being sent to

2   ILG instead of represented individuals if it were still putative class counsel in *Clarke* and

3   the *Flores* action had never been filed.  The fact that the request was made in connection

4   with the *Flores* action does not demonstrate any misuse of confidential information by

5   ILG or the intention to improperly "interfere" with the litigation of the *Paprock* action.

6   That there is substantial overlap between the two actions makes some interaction

7   between counsel in the *Paprock*, *Clarke,* and *Flores* actions inevitable, but such

8   interaction does not constitute "interference."

9          Further, the fact that Defendants are forced to defend against the valid claims of

10   the named plaintiffs in the *Flores* action does not constitute "prejudice."  If so, any

11   evidence that reflects badly on an objecting party would be "prejudicial."  There is no

12   authority cited by Defendants that suggests that the necessity of defending a valid

13   lawsuit is unfair prejudice to a party.

14                 **4.**      **The Timing of Defendants' Motion Demonstrates Misuse of the**

15                            **Protective Order**

16          Defendants contend that the actual "use" of confidential information that

17   allegedly violated the SPO took place, if at all, from January 4 through January 11, 2012,

18   when ILG sent the letter in question to the putative class members in the *Clarke* action.

19   Defendants were well aware of the letter and the Attorney-Client Agreement at least as

20   early as January 21, 2012, when *Paprock*'s counsel filed a notice of related case in the

21   *Clarke* action, and attached a copy of one of the letters.  (Docket No. 99.)[5]  Despite this,

22   Defendants did not allege a violation of the SPO.

23          Defendants knew that ILG was filing the *Flores* action as of April 16, 2012, when

24   ILG sent a letter to Defendants advising them that ILG represented more than 1700

25   current and former First Transit employees and was pursuing a mass action on their

26   behalf.  Yet Defendants did not raise the issue of the alleged violation of the SPO at that

27   _____

28   [5] Docket No. 99 is a Notice of Discrepancy and Order rejecting Paprock's
counsel's notice of pendency of other actions.  Attached to that filing are exemplars of
the letter and Attorney-Client Agreement, providing Defendants notice.

1    time either.

2         In fact, it was not until June 13, 2012, five full months after the letters were sent

3    out by ILG, and at least two full months after Defendants were put on notice of ILG's

4    intention to pursue the *Flores* action that Defendants first sought to enforce the SPO.

5    Such delay certainly does not comport with Defendants' newly expressed concerns.  In

6    fact, this substantial delay, and the fact that the motion itself is actually being used for

7    improper relief, weighs heavily against imposing sanctions of any kind against ILG, and

8    certainly dictates that disqualification is not a proper sanction.[6]  *See, e.g., River West Inc.*

9    *v. Nickel*, 188 Cal. App. 3d 1297, 234 Cal. Rptr. 33 (1987) (delay in seeking

10   disqualification constitutes implied waiver of the right to seek disqualification); *see also*

11   *TransPerfect Global, Inc. v. MotionPointCorp.*, 2012 U.S. Dist. Lexis 85649 (N.D. Cal.

12   June 20, 2012) (court looked to issues including the delay by the moving party in

13   seeking disqualification as evidence of use of disqualification for tactical purposes).

14      **C.    ILG's Communications With Putative Class Members Were**
15            **Accurate And Proper**

16         **1.    The January 2012 Letter and Attorney-Client Agreements to**
17                **Putative Class Members Were Accurate**

18         Defendants make the broad accusation that "the solicitation letter and

19   Engagement Agreement sent out by ILG contained false statements."  (Defs.' Mem. P.

20   & A. at 17:11-12.)  Yet Defendants fail to identify any false statements in the January

21   2012 letter.  And, in fact, *there is not a single false statement contained in the January*

22   *2012 letter* that was sent to the putative class members.  The January 2012 letter

23   accurately identifies the case for which ILG is contacting the employees, both in the

24   subject line and in the first sentence of the letter, and proceeds to accurately describe the

25

26        [6] Defendants' reliance on *Henry Schein, Inc. v. Certified Business Supply, Inc.*,
     No. 2008 U.S. Dist. LEXIS 81826 (C.D. Cal. Aug. 20, 2008) is misplaced.  In *Henry*
27   *Schein*, the offending party made false statements to plaintiff's customers and violated a
     permanent injunction specifically precluding the offending party of contacting plaintiff's
28   customers.  ILG's conduct in no way can be equated to making false statements to
     defendants' customers or acting contrary to a permanent injunction.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 99067

1   reason for the letter.  The failure by Defendants to point to *any* language in the letter that

2   is false is telling.  In addition, at the parties' June 22, 2012 conference of counsel,

3   Defendants' counsel conceded that the letter itself was not improper and did not in itself

4   constitute a violation of the SPO.  (Williams Decl. ¶ 29.)

5           The only statements specifically alleged as false, which are contained in the

6   Attorney-Client Agreement, are not, in fact, false.  Specifically, the language in the

7   Attorney-Client Agreement regarding ILG's intention to represent the clients in

8   connection with the class claims, rather than the clients' individual claims, was an

9   accurate statement when the letter was sent.  The full language of the sentence that

10  Defendants allege to be false provides clarification.  The full sentence reads "Attorneys

11  ***currently*** seek to represent Client and others similarly situated as a Class (and not in

12  separate, individual cases.)" (Emphasis added.)  That was an accurate statement, as at the

13  time that ILG sent out the letter to the *Clarke* putative class members along with the

14  Attorney-Client Agreement, ILG did, in fact, seek to represent the putative class

15  members in connection with the *Clarke* class action, as demonstrated by the language in

16  the letter and the Attorney-Client Agreement.

17          This same clarification demonstrates the accuracy of the second statement alleged

18  by Defendants to be false, as well.  Defendants contend that ILG intended to pursue the

19  class claims over the clients' individual claims.  At the time the letter and the Attorney-

20  Client Agreement were sent to the putative class members in *Clarke*, ILG's intention

21  was to pursue the class claims in *Clarke*, and not the individual claims of any of the

22  employees who signed the Attorney-Client Agreement.  That ILG ultimately pursued the

23  clients' claims in a mass action does not, however, render these statements false.  Nor,

24  moreover, does this circumstance justify the draconian and self-serving remedies being

25  sought by Defendants.  This is particularly true when Defendants have the burden of

26  proving their claims by clear and convincing evidence (necessary for contempt motions),

27  yet have failed to set forth any evidence to support their accusation that ILG knew the

28  information in the letter and the Attorney-Client Agreement to be inaccurate in some

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   way when ILG sent them to the putative class members.  More importantly, the

2   allegedly misleading statement does not in any way prejudice the *Flores* plaintiffs.  To

3   the contrary, the *Flores* action provides the plaintiffs with the broadest possible

4   protection for their claims.

### 2.    ILG Had No Duty to Disclose the Other Actions

6       Defendants attempt to manufacture a misrepresentation by ILG in its

7   communications with the putative class by arguing that ILG did not disclose the

8   existence of the *Paprock* or *Alonzo* actions in its letters to the *Clarke* putative class

9   members.  (Defs.' Mem. P. & A. at 7:7-15.)  However, Defendants can cite to no

10  authority for the proposition that ILG had an obligation to communicate to the putative

11  class members the existence of subsequently filed actions, particularly when none of

12  them had been certified at the time of ILG's communications.  That is because there is

13  no such authority.  If plaintiffs' counsel pursuing a putative class action were required to

14  advise the putative class of the existence of subsequently filed and potentially

15  overlapping claims, this would ultimately punish the first plaintiff to file by forcing that

16  individual and his or her counsel to constantly update the putative class members of any

17  subsequently filed action. This is not required by the law.  The case law supports the

18  propriety of ILG's communications with the putative class members.  *See*, *e.g.*, *Parris v.*

19  *Super. Ct.*, 109 Cal. App. 4th 285, 135 Cal. Rptr. 2d 90 (2003) (a law firm is not barred

20  from submitting written advertisements, clearly marked as such, to putative class

21  members in a case it is itself litigating); *Rand ex. Rel. Dolch v. Amer. National Ins. Co.*,

22  No. C 09-639 SI, 2010 WL 2758720 (N.D. Cal. July 13, 2010) (same).

### D.    Defendants Assert a Duty of Loyalty Where None Exists and a
### Violation That Did Not Occur

#### 1.    There Was Never an Attorney-Client Relationship Between
#### ILG And The Putative Class Members In *Clarke*

27      Defendants' breach of duty of loyalty allegation is premised on an erroneous

28  assumption.  Specifically, Defendants assume that ILG had an attorney-client

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   relationship with the putative class members that gave rise to a duty of loyalty.

2   However, it is well-established that no such relationship exists.  Until the class is

3   certified, there is no attorney-client relationship between putative class counsel and the

4   potential class members.  *See, e.g. Kullar v. Foot Locker Retail, Inc.*, 191 Cal. App. 4th

5   1201, 1205, 121 Cal. Rptr. 3d 353, 356 (2011) (no attorney-client relationship between

6   putative class counsel and the members of the putative class pre-certification); *Atari, Inc.*

7   *v. Superior Ct.*, 166 Cal. App. 3d 867, 873, 212 Cal. Rptr. 773, 776 (1985) (same).

8        Defendants' attempt to conflate a generally owed "fiduciary duty" with the duty

9   of loyalty owed to an individual client is unavailing.  (Defs.' Mem. P. & A. at 18:20-

10  19:14.)  Defendants invoke *Stone v. Advance Amer. Cash Adv. Ctrs., Inc.*, 2009 U.S.

11  Dist. LEXIS 112968 (S.D. Cal. Dec. 4, 2009) for the proposition that counsel "owe the

12  entire class a fiduciary duty once the class complaint is filed."  Yet instances in which a

13  breach of this particular fiduciary duty has been found illuminate that there is not the

14  posited intersection with those rules of professional conduct that set forth the distinct

15  "duty of loyalty."  *See* Cal. Rules Prof. Cond. R. 3-300, 3-310.

16       For instance, *Stone*[7] relies on *In re GMC Pick-Up Truck Fuel Tank Prods. Liab.*

17  *Litig.*, 55 F.3d 768 (3d Cir. 1995), in which a breach of a fiduciary duty was found in

18  class counsel having negotiated a settlement that did not maximize the class members'

19  interests, and at the same time negotiated attorneys' fees for having done "very little

20  work."  *Id* at *103-105.  *Stone* thus exemplifies that a breach of fiduciary duty, in

21  contrast to a breach of the duty of loyalty, is a generalized breach by which the

22  _____

23  [7] The fiduciary duty inquiry in *Stone* is inapposite here, as the *Stone* court was considering whether, as a fiduciary to prospective class members, plaintiffs' counsel could avail itself of exceptions to state and federal privacy legislation.  *See Stone* 2009 U.S. LEXIS 112968 at *9-10.  In addition to *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, discussed above, the *Stone* decision also relies on *Her v. Regions Fin. Corp.*, 2007 U.S. Dist. LEXIS 71736 (W.D. Ark. Sept. 24, 2007) to substantiate that a fiduciary duty applies, pre-certification.  Yet, like *Stone*, *Her* also took up whether the fiduciary duty of the counsel representing the named plaintiff triggered exceptions to privacy legislation, an issue of no conceivable relevance here, other than to underscore that the fiduciary duty embodied in *Stone*, *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Liti.*, and *Her* is distinct from the duty of loyalty embodied in the  California Rules of Professional Conduct.  As such, Defendants' attempt to conflate the fiduciary duty doctrine with the duty of loyalty is unsupportable.

1   representation as a whole is compromised, and thus inadequate, typically yielding, as in

2   *Stone*, an unsatisfactory outcome to the totality of the litigation.

3   Accordingly, in contrast to the highly specific duty of loyalty that does attach

4   between counsel and individual clients, such as the named plaintiffs in a putative class

5   action, the fiduciary duty embodied in the decisions Defendants cite is a very different

6   type of duty, the violation of which typically equates to conduct that severely

7   undermines, in a fundamental way, the action in which the breach of fiduciary duty

8   arises.  In sum, therefore, Defendants fail to equate the fiduciary duty that does apply,

9   pre-certification, to absent class members, with the duty of loyalty, which does not.

10   **2.      Even If There Was a Duty, ILG's Actions Have Been**

11   **Consistent with Any Such Duty**

12   **(a)      The *Flores* Action Provides Employees With Additional**

13   **Opportunities For Recovery**

14   Defendants accuse ILG of violating its duty of loyalty by filing *Flores*.  (Defs.'

15   Mem. P. & A. at 18:20-21:14.)  However, Defendants do not venture to explain exactly

16   how ILG has violated this duty.  Defendants cannot explain how the filing of the *Flores*

17   action, which seeks redress for more than 1600 individuals who are part of the *Clarke*

18   putative class, and for the *same violations*, operates to create a conflict with any duty.  In

19   theory, ILG could have continued to pursue both the *Clarke* class action and the *Flores*

20   mass action simultaneously without violating its duty of loyalty to any of the current or

21   former clients, since both actions seek redress for the same violations, on behalf of the

22   same group of individuals and against the same defendants.

23   Far from violating any duty of loyalty, therefore, ILG has deployed its

24   considerable resources to vigorously pursue the viable claims of all involved.

25   **(b)      ILG Did Not "Gut" *Clarke***

26   Defendants variously assail ILG for "gutting" the *Clarke* action (Defs.' Mem. P.

27   & A. at 9:1; 21:10) and effectively leaving the case strip-mined of "all putative class

28   members who had expressed an interest in the claims alleged in Clarke and could have

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

been used as supportive witnesses on behalf of the putative class." (*Id.* at 21:10-13.)
Once again, though, the truth is starkly at odds with Defendants' attempt to portray ILG
as having engaged in a deliberate plan to "abandon" (*id.* at 15:13) the prospective class
members in *Clarke*.

Defendants essentially contend that, on the one hand, ILG is ill-suited to represent
the class members but, on the other hand, the *Clarke* action was somehow "gutted" by
ILG having substituted out of *Clarke*, with the Law Offices of Mark Yablonovich
("LOMY") assuming representation  of Mr. Clarke in his pursuit of the putative class
action.  In fact, ILG has continued to actively support the certification efforts in *Clarke*.
(Williams Decl. ¶ 26.)  Indeed, far from being the improper alliance that Defendants'
posit, ILG's close working relationship with Mark Yablonovich, one of ILG's founding
partners, and his law firm, has inured to the benefit of the *Clarke* putative class members.
For instance, ILG has worked closely with LOMY in analyzing the method for obtaining
an accurate sample of supplemental data from Defendants; ILG has assisted in
identifying what discovery has been conducted and what discovery remains to be
conducted; and has identified what it perceives as the strengths and weaknesses of the
various claims in the *Clarke* action.  (*Id.*)  In short, ILG is actively assisting Mr. Clarke
and his attorneys in their efforts to certify the *Clarke* action.

Defendants' accusation also demonstrates a fundamental misunderstanding of
class action law and procedure, as every party in the *Flores* mass action is a putative
class member in the *Clarke* action, and if *Clarke* is certified, each of them will all have
the opportunity to decide whether they would prefer to proceed as part of the certified
*Clarke* action or as part of the *Flores* action.

### (c)    No Conflict of Interest Exists

As with their other allegations, Defendants have failed to present any evidence of
an actual conflict of interest that has arisen, or that has the potential of arising, as a result
of ILG's decision to file the *Flores* action, much less the clear and convincing evidence

1    necessary in a contempt motion.[8]

2          Defendants characterize the *Flores* and *Clarke* cases as somehow "competing"

3    but provide no explanation as to how that is true, or how that creates a conflict.  In

4    reality, the cases are not in any way competing.  The *Clarke* action, currently being

5    prosecuted by LOMY, seeks to pursue remedies for meal and rest break and off-the-

6    clock labor code violations by the procedural mechanism of a class action.  At the same

7    time, *Flores* seeks redress by a subset of the individuals in the *Clarke* action on an

8    individual basis for the same remedies for the same wrongs committed by Defendants.

9    If and when the *Clarke* case is certified, ILG's clients will have to decide whether to

10   proceed as part of the class action, or whether they'd prefer to proceed as a member of

11   ────────────────
     [8] *Moreno v. AutoZone Inc.*, 2007 U.S. Dist. LEXIS 98250 (N.D. Cal. Dec. 5,

12   2007), while relevant to the Court's analysis, does not support Defendants' motion.  The
     court in *Moreno* acknowledged that the party seeking disqualification had taken a

13   "kitchen-sink approach to its disqualification motion [that] underscores the concern,
     reflected in the caselaw, that disqualification motions are 'often tactically motivated' and

14   'tend to derail the efficient progress of litigation.'"  2007 U.S. Dist. LEXIS 98250 at *7.
     The court then sorted through the "chaff" of accusations by the moving party (who was

15   represented by the same defense law firm moving against ILG), and identified only three
     actions that it believed justified disqualification in that case: (1) failure to obtain

16   informed consent of concurrent representation of conflicting interests (representing both
     objecting and non-objecting class members in a settled class action); (2) initiating

17   unauthorized contact with represented parties; and (3) submitting inaccurate and
     misleading information to the court in connection with a pro hac vice application.  *Id.* At

18   *7-8.  None of those issues are present in this case.  No actual (or potential) conflict of
     interest exists.  There has been no unauthorized contact with the putative class members.

19   The January 2012 letter from ILG was sent before *Paprock* was certified, meaning that
     none of the individuals who were sent the letters were represented at the time.  Finally,

20   there is no accusation that ILG has made misrepresentations in filings with the Court in
     this action.  As a result, Defendants' reliance on *Moreno* is misplaced.

21        *Flatt v. Sup. Ct.* (9 Cal. 4th 275), 884 P.2d 950 (1994) is inapposite.  The
     defendant in *Flatt* was a law firm that represented another law firm, and was approached

22   by an individual who sought to sue the firm represented by the defendant.  The
     defendant refused the representation, and refused to give the individual advice, believing

23   that to do so would violate its duty of loyalty to its law firm client.  The issue before the
     court was whether the defendant had a duty to advise the individual of the statutes of

24   limitations on his claims against the law firm.  The court determined that it did not.  *Flatt*
     is limited to the issues of simultaneous or successive representation of different parties

25   and the timing of when a potential attorney-client relationship begins, and the conflict of
     interest issues that can arise as a result.  In ordering summary judgment in favor of the

26   defendant, the court held that when the issue is one of successive representation, the
     main concern is one of preserving confidentiality.  9 Cal. 4th at 283.  This is not at issue

27   in the present case, where ILG is representing the same people in Flores as it did in
     Clarke.  Likewise, the court's analysis of simultaneous representation again focuses on

28   conflicts that can arise in representing different parties at the same time, and is limited to
     the situation where there is an actual conflict, not an issue in the present action.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

the *Flores* mass action, but the availability of those options does not jeopardize their ability to recover under either action.

## IV.    CONCLUSION

For the foregoing reasons, ILG respectfully requests that the Court deny Defendants' motion in its entirety.


Dated:  July 23, 2012                          Respectfully submitted,

Initiative Legal Group APC


By:   /s/ Gene Williams
Mónica Balderrama
Gene Williams

Former Attorneys for Plaintiff Eric Clarke